**IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG**

**LAVELL BONE,**

> **Plaintiff,**

**v.**                                                    **Civil Action No. 3:19-CV-214
(GROH)**

**DR. LINGO LAI,
DR. BEN STEPHENS,
WVU MEDICINE EYE INSTITUTE, and
W.V. UNIVERSITY HOSPITALS,**

> **Defendants.**

**REPORT AND RECOMMENDATION**

## I. INTRODUCTION

On December 23, 2019, the *pro se* Plaintiff, who was previously a federal prisoner incarcerated in the Northern District of West Virginia, initiated this case by filing an action pursuant to 42 U.S.C. § 1983, claiming his Constitutional rights were violated. ECF No. 1.[1] On March 12, 2020, Plaintiff raised the same allegations in an amended complaint, pursuant Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971). ECF No. 13. On April 21, 2020, Defendants filed a motion to dismiss Plaintiff's complaint. ECF No. 23.

The matter is now before the undersigned for a Report and Recommendation to the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR PL P 2. For the reasons

---

[1] All CM/ECF numbers cited herein are from the instant case, 3:19-CV-214, unless otherwise noted.

set forth below, the undersigned recommends that the petition be denied and dismissed without prejudice.

## II.     FACTUAL AND PROCEDURAL HISTORY

Plaintiff initiated this action on December 23, 2019, while incarcerated[2] at USP Hazelton in the Northern District of West Virginia, alleging injuries related to a surgery performed on November 21, 2017.    ECF No. 1 at 4 – 5, 7 – 8.  Pursuant to the Court's order [ECF No. 9], he refiled his complaint as a Bivens action[3] alleging the following four claims: (1) that Defendant Lai ("Lai") performed a surgery on Plaintiff but failed to follow post-operative protocols related to the catheter placed during surgery [ECF No. 13 at 7]; (2) that Defendant Stephens ("Stephens") assisted Lai in performing the Plaintiff's surgery and also failed to follow post-operative protocols related to the catheter placed during surgery [Id. at 8]; (3) that Defendant WVU Medicine Eye Institute ("WVU Eye Institute") is liable for Plaintiff's pain and suffering because Lai and Stephens were employees of WVU Eye Institute [Id.]; and (4) that Defendant WV University Hospitals ("WVU Hospitals") is liable for Plaintiff's pain and suffering because that entity oversees WVU Eye Institute [Id.]. Plaintiff asserts that because of Defendants' actions he was required to use a Foley catheter after surgery for 37 days, causing him physical pain in his stomach and bladder, and psychological pain.  Id. at 9.  Plaintiff seeks $250,000.00 from each defendant.  Id.

According to the amended complaint, Plaintiff filed at least one grievance, but there was "nothing that could be done because the doctors [were] contractors."  Id. at 6.  The

---

[2] According to the Bureau of Prisons inmate locator website, Plaintiff is currently incarcerated at USP Atlanta, with a projected release date of February 6, 2043.  https://bop.gov/inmateloc/

[3] Although not attached to Plaintiff's Bivens complaint, the Court considered exhibits [ECF No. 1-1], which were attached to the original § 1983 complaint [ECF No. 1] in preparing this Report and Recommendation.

initial complaint states that Plaintiff filed a grievance while at Lewisburg USP, which was denied because Plaintiff was untimely in filing his grievance.  ECF No. 1 at 5, 1-1 at 1, 6.

As attachments to his initial complaint, Plaintiff filed copies of two administrative remedy rejection notices.  ECF No. 1-1 at 1, 6.  The first of those rejection notices is dated June 26, 2019, and states that the Regional Appeal was rejected in case number 980466-R1.  ECF No. 1-1 at 6.  The second of those rejection notices is dated August 1, 2019, and states that the Central Office rejected Plaintiff's administrative remedy number 980466-A1.  ECF No. 1-1 at 1.  The August 1, 2019, rejection states that "if staff provide a memo stating late filing was not your fault, then resubmit to the level of the original rejection."  Id.

Defendants' motions to dismiss[4] argue that Plaintiff's claims must be dismissed for the following reasons: (1) that Plaintiff failed to serve a notice of claim and screening certificate of merit, as mandated by W.Va. Code § 55-7B-6 [ECF No. 24 at 3, 5 - 8]; (2) that Plaintiff failed to exhaust his administrative remedies [Id. at 8 – 10]; (3) that Plaintiff failed to properly effectuate service on Stephens and Lai [Id. at 10 – 11]; (4) that WVU Medicine Eye Institute is a non-entity, and not a corporation or entity capable of being sued [Id. at 11 – 12]; (5) that Plaintiff cannot demonstrate deliberate indifference to support a civil rights claim [Id. at 13 – 15]; (6) that the applicable statute of limitations bars Plaintiff's claims [Id. at 15 – 17]; (7) that WV University Hospital cannot be held liable for alleged civil rights violations of co-defendant physicians [ECF No. 34-1 at 4] and (8) that WV University Hospital is not a proper party to a civil rights action [Id. at 5].

---

[4]  The undersigned notes that motions to dismiss were filed on behalf of Lai, Stephens, and WV Medicine Eye Institute.  ECF Nos. 23, 25, 26.  Those motions were accompanied by memoranda in support thereof.  ECF Nos. 24, 25-2, and 26-2.  The three memoranda are identical, accordingly, herein the Court cites to only the first of the memoranda, ECF No. 24.  Further, the undersigned notes that WV University Hospital filed a separate motion to dismiss and memorandum of law.  ECF Nos. 34, 34-1.

Plaintiff filed a response in opposition to Defendants' motions on August 10, 2020. ECF No. 49.  Attached to that response was another rejection notice, dated November 15, 2019, for administrative remedy number 980466 A-2.  ECF No. 49-4.  The notice stated that the central office appeal was being rejected for the same reasons it was rejected by both the institution and regional office, and that if staff can "provide a memo stating the late filing was not [his] fault, then [Plaintiff should] re-submit to the level of the original rejection."  Id.

## III.   LEGAL STANDARD

### A.   Pro Se Litigants.

Courts must read *pro se* allegations in a liberal fashion.  Haines v. Kerner, 404 U.S. 519, 520 (1972).  However, a complaint is frivolous if it is without arguable merit either in law or in fact.  Neitzke v. Williams, 490 U.S. 319, 325 (1989) (superseded by statute).  The Supreme Court in Neitzke recognized that:

> Section 1915(d)[5] is designed largely to discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suit and because of the threat of sanctions for bringing vexatious suits under Federal Rule of Civil Procedure 11. To this end, the statute accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless. Examples of the former class are claims against which it is clear that the defendants are immune from suit. . .

---

[5]  The version of 28 U.S.C. § 1915(d) which was effective when Neitzke was decided provided, "The court may request an attorney to represent any such person unable to employ counsel and may dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious."  As of April 26, 1996, the statute was revised and 28 U.S.C. § 1915A(b) now provides, "On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-- (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."

490 U.S. at 327.

**B.    Civil Rights Actions Under <u>Bivens</u>.**

In <u>Bivens</u>, <u>supra</u>, the Supreme Court recognized that claimants may assert a cause of action for damages caused by federal agents.  In <u>FDIC v. Meyer</u>, 510 U.S. 471, 484 - 86 (1994), the Court held that federal agencies may not be held liable in a <u>Bivens</u> claim, writing, "*Bivens* from its inception has been based . . . on the deterrence of individual officers who commit unconstitutional acts."  <u>Id.</u>  See <u>Correctional Services Corp. v. Malesko</u>, 534 U.S. 61, 71 (2001).

**C.    Exhaustion of Administrative Remedies**

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. § 1997e (a). "Once within the discretion of the district court, exhaustion in cases covered by § 1997e(a) is now mandatory."  <u>Porter v. Nussle</u>, 534 U.S. 516, 524 (2002).  "[F]ederal prisoners suing under <u>Bivens</u> [ ], must first exhaust inmate grievance procedures just as state  prisoners must  exhaust administrative processes prior to instituting a § 1983 suit."  <u>Id.</u> (internal citation omitted).   Thus, exhaustion through administrative remedies is clearly mandated by § 1997(e)(a) prior to seeking relief through suit pursuant to <u>Bivens</u>. <u>Booth v. Churner</u>, 532 U.S. 731, 741 (2001).

**D.    Motions to Dismiss**

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a case when a complaint fails to state a claim upon which relief can be granted.  The Federal Rules of Civil Procedure require only, "'a short and plain statement of the claim  showing that the

pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited, "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley, 355 U.S. at 45-46.

Plaintiff is proceeding *pro se* and therefore the Court must liberally construe his pleadings. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 - 1 (1972) (per curiam); Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197 (2007). Although a complaint need not contain detailed factual allegations, a plaintiff's obligation in pleading, "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do...." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face." Id. at 555, 570. In Twombly, the Supreme Court found that, "because the plaintiffs [ ] have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. at 570. Thus, to survive a motion to dismiss, a plaintiff must state a plausible claim in his complaint which is based on cognizable legal authority and includes more than conclusory or speculative factual allegations.

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," because courts are not bound to accept as true a

legal conclusion couched as a factual allegation.  Id. at 678.  "[D]etermining whether a complaint states a plausible claim . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id. at 679.  Thus, a well-pleaded complaint  must offer more than, "a sheer possibility that a defendant has acted unlawfully," in order to meet the plausibility standard and survive dismissal for failure to state a claim.  Id. at 678.

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly,  it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses."  Republican Party of North Carolina v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)).  In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff.  Mylan Labs, Inc. v. Matkari, 7 F.3d1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952.

## IV.    ANALYSIS

### A.    Improper Parties

A Bivens cause of action cannot be brought against an individual actor who is not a federal employee or agent, and specific allegations must be brought against each named actor.  Further, in a Bivens case, the Plaintiff must specify the acts taken by each defendant which violate his Constitutional rights. Wright v. Smith, 21 F.3d 496, 501 (2nd Cir. 1994); See Colburn v. Upper Darby Township, 838F.2d 663, 666 (3rd Cir. 1988) ("section 1983 claims [have] the additional pleading requirement that the 'complaint contain a modicum of factual specificity identifying the particular conduct of defendants that is alleged to have harmed the plaintiffs'").  Moreover, a Bivens action may

7

not be brought against a federal agency.  <u>FDIC v. Meyer</u>, 510 U.S. 471, 486 (1994). Plaintiff has named two State entities, WVU Eye Institute and WV University Hospitals, as defendants in this <u>Bivens</u> action.  Neither State institutional entity is a proper defendant, and even if the two institutional defendants were considered federal agencies, the Supreme Court has expressly held that such agencies are not liable in <u>Bivens</u> actions. Accordingly, WVU Eye Institute and WV University Hospitals merit dismissal from this action with prejudice.

### B.    Failure to Serve Defendant Stephens

One of the two individuals named by Plaintiff in this claim, Stephens, was never personally served with process.  The Summons issued to Stephens was returned as unexecuted on April 15, 2020.  ECF No. 30.

To effectuate service under Federal Rule of Civil Procedure 4(e), Plaintiff could have served Defendant Stephens by:

> **(1)** following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
> **(2)** doing any of the following:
>> **(A)** delivering a copy of the summons and of the complaint to the individual personally;
>> **(B)** leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
>> **(C)** delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e).

The return of service for Stephens contains a notation that "Subject no longer employed at business provided."  ECF No. 30 at 3.   Accordingly, because Plaintiff failed to serve process upon Stephens as required by the Rules of Civil Procedure, the

undersigned recommends that Defendants' motion to dismiss be granted, and Stephens be dismissed with prejudice for such failure to effectuate service.

### C.   Failure to Exhaust Administrative Remedies

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies.  42 U.S.C. § 1997e(a).  "Federal prisoners must exhaust their administrative remedies prior to filing § 2241 petitions.  Failure to exhaust may only be excused upon a showing of cause and prejudice."   McClung v. Shearin, 90 F. App'x 444, 445 (4th Cir. 2004) (citing Carmona v. United States Bureau of Prisons, 243 F.3d 629, 634-35 (2d Cir.2001), Little v. Hopkins, 638 F.2d 953, 953-54 (6th Cir.1981)).  Exhaustion as provided in § 1997e(a) is mandatory, regardless of the relief offered through administrative procedures.  Booth v. Churner, 532 U.S. 731, 741 (2001). The Supreme Court has recognized "that the Act's exhaustion provisions would apply to *Bivens* suits."  Ziglar v. Abbasi, 137 S. Ct. 1843, 1865 (2017) (citing Porter v. Nussle, 534 U.S. 516, 524, 122 S.Ct. 983 (2002)).  Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted *prior to* filing a complaint in federal court.  Porter v. Nussle, 534 U.S. 516, 524 (2002) (citing Booth, 532 U.S. at 741). "Those remedies need not meet federal standards, nor must they be 'plain, speedy, and effective.'"  Porter, 534 U.S. at 524.

Defendants have raised Plaintiff's failure to exhaust his administrative remedies as a defense to suit.

Plaintiff claims that his failure to exhaust was caused by Bureau of Prisons staff who prevented him from filing his grievances.  ECF No. 49 at 3 – 4.   As recognized in

Carmona, supra, which was cited by the Fourth Circuit in its opinion in McClung:

> [T]he interests of judicial economy and accuracy are served by requiring that, absent a showing of cause and prejudice, appeals proceed in the first instance through the federal agency review process. Following the administrative procedures could potentially obviate the need for judicial review, or at a minimum, develop the factual record at the agency level at a time when the disputed events are still relatively fresh in witnesses' minds. In this sense, it is the analogue of the exhaustion of state remedies requirement for a state prisoner seeking federal habeas review, and the results governing failure to take this path should be the same.
>
> Administrative autonomy is also served by requiring that a federal prisoner justify his failure to exhaust his intra-Bureau remedies.  When, however, legitimate circumstances beyond the prisoner's control preclude him from fully pursuing his administrative remedies, the standard we adopt excuses this failure to exhaust.

Carmona, 243 F.3d at 634 (internal citations omitted).

The BOP provides a four-step administrative process beginning with attempted informal resolution with prison staff (BP-8).  If the prisoner achieves no satisfaction informally, he must file a written complaint to the warden (BP-9), within 20 calendar days of the date of the occurrence on which the complaint is based. If an inmate is not satisfied with the warden's response, he may appeal to the regional director of the BOP (BP-10) within 20 days of the warden's response.  Finally, if the prisoner has received no satisfaction, he may appeal to the Office of General Counsel (BP-11) within 30 days of the date the Regional Director ("RD") signed the response.[6]  An inmate is not deemed to

---

[6] "If accepted, a Request or Appeal is considered filed on the date it is logged into the Administrative Remedy Index as received.  Once filed, response shall be made by the Warden or CMM. within 20 calendar days; by the Regional Director within 30 calendar days; and by the General Counsel within 40 calendar days...If the time period for response to a Request or Appeal is insufficient to make an appropriate decision, the time for response may be extended once by 20 days at the institution level, 30 days at the regional

have exhausted his administrative remedies until he has filed his complaint at all levels. 28 C.F.R. § 542.10-542.15; Gibbs v. Bureau of Prison Office, 986 F.Supp. 941, 943 (D. Md. 1997).

Within the BOP's record-keeping system, each administrative remedy request is assigned a six-digit numerical ID, or case number, as well as an alpha-numeric suffix. For each specific remedy request, the numerical ID, or case number, remains the same, while the alpha-numeric suffix may change, depending upon the progression of the request through the various levels of administrative review. The alpha portion of the suffix indicates the specific level of the administrative review process.  Thus, the suffix "F" identifies a remedy request at the institutional (the facility) level, while the letter "R" represents the Regional Office level, and the letter "A" indicates the General Counsel, or the Central Office level. The numeric portion of the suffix indicates the number of times that particular administrative grievance has been filed at a specific level. For example, "F1," indicates the inmate has filed once at the institutional level. If the inmate is rejected at that level and re-files at the same level, the suffix would be "F2."

An inmate's complaint at the institutional level or on appeal may be rejected for noncompliance with the requirements of the administrative remedy process. If the defect can be cured, the inmate will be given an opportunity to do so and to resubmit his complaint.  If the inmate is not given an opportunity to fix his complaint he may appeal to

---

level, or 20 days at the Central Office level. Staff shall inform the inmate of this extension in writing. Staff shall respond in writing to all filed Requests or Appeals.  If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." 28 C.F.R. § 542.18.

the next level. Generally, an inmate has not exhausted his remedies until he has sought

review and received a final substantive response at all three levels.

With respect to Plaintiff's claims regarding his administrative remedy submissions,

Plaintiff did not submit a copy of either his BP-8 filed with staff or his BP-9 filed with the

warden, or the response to either of those grievances.  Nor did Plaintiff submit a copy of

his BP-10 submitted to the regional office, although he submitted a copy of the rejection

notice of his BP-10, dated June 26, 2019, which concurred with the rationale given by the

institution.  ECF No. 1-1 at 6.  Plaintiff also submitted a copy of his rejection notice from

the Central Office, dated August 1, 2019, which concurred with the rationale of the

regional office and/or institution for rejection of Plaintiff's claims.  Id. at 1.  Further, that

rejection advised Plaintiff that, "if staff provide a memo stating late filing was not [his] fault,

the [he could] resubmit [his grievance] to the level of the original rejection."  Id.  From the

Central Office rejection notice, it appears that Plaintiff's grievance was previously denied

as untimely, having been received more than 20 days after the alleged incident.  Finally,

Plaintiff submitted another rejection notice from the Central Office dated November 15,

2019, which again advised Plaintiff that he could resubmit his grievance to the level of the

original rejection if staff provided him with a memo stating his late filing was not his fault.

ECF No. 49-4.

This recitation of the plaintiff's grievance history establishes that he did not exhaust

the medical allegations raised in his complaint.  Despite being twice advised by the central

office that he could resubmit his grievance, he failed to do.

In response to the Defendants' pending Motions to Dismiss, Plaintiff addresses the

affirmative defense that he did not exhaust his administrative grievances as required by

the PLRA, stating that prison officials prevented him from filing grievances three times while he was incarcerated at USP Hazelton.  ECF No. 49 at 3.  Plaintiff does not explain how prison officials prevented him from filing his grievances, simply that the act occurred. Plaintiff next claims that after being transferred to Big Sandy USP on or around February 19, 2018, he filed both a BP-8 and a BP-9 regarding this grievance but never received a response to either complaint.  Id. at 3 – 4.  Plaintiff asserts that when he was transferred to Lewisburg USP on or around July 9, 2018, he filed a grievance, even though his counselor was reluctant to process his BP-8, because the incident complained of occurred well past the 20-day deadline for filing.  Id. at 4.

In Ross v. Blake, 136 S.Ct. 1850, 1860 (2016), the Supreme Court described the three ways that "an administrative remedy, although officially on the books, is not capable of use to obtain relief" when: (1) despite regulations promise, the remedy operates as a simple dead end, "with officers unable or consistently unwilling to provide any relief to aggrieved inmates" (citing Booth v. Churner, 532 U.S. at 736, 738); (2)  the administrative remedy scheme is "so opaque that it becomes, practically speaking, incapable of use," or is so "unknowable such that no ordinary prisoner can make sense of what it demands" (citing Goebert v. Lee County, 510 F.3d 1312, 1323 (11th Cir. 2007) and Turner v. Burnside, 541 F.3d 1077, 1084 (11th Cir. 2008); and (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."

Plaintiff claims that he was prevented from filing a grievance while at Hazelton, but presents nothing to support his claim.  By contrast, the administrative remedy that Plaintiff filed out of time was known to his institutional counselor who, in Plaintiff's words, "didn't

want to process the BP-8 because the incident was way over 20 days", but the counselor did so anyway.  That remedy was repeatedly denied as being untimely.  Plaintiff was advised that if staff provided a memo which stated that the untimeliness was not Plaintiff's fault, then Plaintiff could refile.  Plaintiff failed to ever do so.  Because the Court finds Plaintiff failed to available exhaust administrative remedies, therefore depriving this Court of jurisdiction, the Court need not address any of the merits of Plaintiff's claims.

In <u>Steel Co. v. Citizens for a Better Environment</u>, 523 U.S. 83, 94 - 95 (1998), the Supreme Court wrote that "without jurisdiction the court cannot proceed at all in any cause.  Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." <u>See also</u> <u>Reinbold v. Evers</u>, 187 F.3d 348, 359 n. 10 (4th Cir. 1999).  Plaintiff's failure to exhaust his available administrative remedies thus depriving this Court of jurisdiction over his complaint.  Accordingly, this matter is subject to dismissal without prejudice.

## V.    RECOMMENDATION

For the foregoing reasons, the undersigned **RECOMMENDS** that Plaintiff's complaint [ECF No. 13] be **DISMISSED  WITH PREJUDICE** as to **DEFENDANTS STEPHENS, WVU MEDICINE EYE INSTITUTE AND WV UNIVERSITY HOSPITAL.**

It is further **RECOMMENDED** that the complaint [ECF No. 13] be **DISMISSED WITHOUT PREJUDICE** AS TO **LAI** for failure to exhaust administrative remedies.

It is further **RECOMMENDED** that Defendants' motions to dismiss [ECF Nos. 23, 24, 25, 26, and 34] be **GRANTED**.

**Within fourteen (14) days** after being served with a copy of this Recommendation, any party may file with the Clerk of the Court, **specific written**

14

**objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.** A copy of such objections should also be submitted to the Honorable Gina M. Groh, Chief United States District Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitation, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

This Report and Recommendation completes the referral from the district court. The Clerk is directed to terminate the Magistrate Judge's association with this case.

The Clerk is directed to provide a copy of this Report and Recommendation to the *pro se* Petitioner by certified mail, return receipt requested, to his last known address as reflected on the docket sheet, and to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

DATED:        December 17, 2020

/s/ *Robert W. Trumble*
ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE